# S T A T E   O F   L O U I S I A N A

## PARISH OF ORLEANS

GERVAIS J. KING,
(Globe Indemnity Company, Subrogee.)

### versus

CHARLES I. TOMS,
Testamentary Executor of
Samuel M. Dayton, deceased.

No. 6772,

COURT OF APPEAL.

JUDGMENT AFFIRMED.

# O P I N I O N

Plaintiff sues the defendant for the sum of $800.00 due on mortgage notes, with 5% per annum interest on $300.00 from July 2, 1914; 8% per annum interest on $300.00 from September 2, 1914; and 8% interest on the sum of $200.00 from November 2, 1914, until paid; together with 5% on said amount as attorneys' fees, and with recognition of plaintiff's special mortgage to secure said amount on the property described in the petition, and recorded in the Clerk's office of the Parish of Plaquemines on April 15, 1914, in Mortgage Office Book No. 5, Folio 429; and that said property should be sold to pay said amount, and for costs.

He declares that he was the last holder of the above described notes made by the defendant, and that said notes were given to him as representing the unpaid purchase price of a certain lot of movables and moving picture show situated at the corner of Magazine and Seventh Streets in this city, known as the "Majestic Theatre"; that defendant mortgaged and specially hypothecated to your petitioner, or any future holder of said notes, the property described in the petition and agreed, in the event that the notes were not paid punctually at maturity, the property could be sold and seized under judicial process issued by a competent court. He alleges that said mortgage was properly recorded in the Clerk's Office of the Parish of Plaquemines, and demand for payment being made was refused, and he prays for judgment as hereinbefore set forth in his petition.

There was first filed a plea of want of jurisdiction, a peremptory exception, which was overruled - properly so, by the judge a quo, and subsequently, on the 8th of March, 1915, defendant filed substantially the following answer: He denies that plaintiff is the owner in good faith and for a valuable consid-

eration of the notes in question; admits the execution of the notes as set out in plaintiff's petition, but denies any liability to plaintiff therefor; admits that the notes were given as part of the purchase price of a certain moving picture business conducted in the Majestic Theatre in this city, but denies any liability thereunder. He alleges that on or about the 20th of March, 1914, he bought from plaintiff the picture show located as plaintiff described, and called the "Majestic Theatre"; that plaintiff actively solicited and pressed defendant to purchase said theatre, and after frequent negotiations, relying on the representations and warranties made by plaintiff, he did purchase the said moving picture business for the sum of $1800.00, one thousand dollars of which he paid in cash, and the balance with the notes sued on. He avers, amongst other things, that the plaintiff represented that the business was a lucrative one and that the net profits averaged over $50.00 per week; that plaintiff further alleged that on account of the illness of his wife he was compelled to take her to New York to have a serious operation performed upon her, which could not be done in New Orleans, and, in order to induce this defendant to purchase his moving picture business, deliberately misrepresented the facts in regard to the receipts taken in by said theatre, and that he (plaintiff) falsely and fraudulently, and with the deliberate intention to deceive and mislead defendant and to induce him to purchase the said moving picture show business, represented the profits from said moving picture show exceeded $50.00 per week, net, and that it was on the faith of the statements and warranties made by plaintiff as to the receipts of said theatre, and the net proceeds made thereupon, that defendant was induced to purchase said moving picture business and to execute the notes herein sued on.

Answering further, in reconvention, he says that plaintiff failed and neglected to comply with the terms of the contract sale, which, amongst other things, provided that the lease

3

between the lessor and defendant of the Majestic Theatre was to have been transferred, with the consent of the landlord, to him, which was never done; further, that plaintiff had agreed and solemnly promised not to enter or engage in the moving picture business within a distance of one-half mile of the Majestic Theatre for a period of five years from the date of said contract, and furthermore bound himself in the sum of $1000.00 liquidated damages should he violate his obligation not to enter into the moving picture business within the area and the time described. Then, assuming the position of plaintiff in reconvention, defendant avers that plaintiff was justly and truly indebted unto him in the full sum of $1000.00, and for the rescission of sale entered into by and between plaintiff and defendant on April 2, 1914, and for the cancellation of the notes given on the date of said contract, aggregating $800.00; claiming further, in reconvention, that he was entitled to the rescission of said contract of sale, return of the moneys paid, and cancellation of the notes herein sued on, by reason of the breach of contract through the failure of defendant in reconvention to turn over the unexpired lease of the Majestic Hall as provided; and again, in Article 20 of the reconventional demand, he alleges that plaintiff in reconvention avers that as a matter of fact the said moving picture business was not a paying business; that instead of paying a net profit of $50.00 per week, as alleged and warranted by defendant in reconvention, that said moving picture business showed a loss for each and every week it was operated by plaintiff in reconvention; that the business had not been profitable to plaintiff, as represented by him; that said representation induced plaintiff in reconvention to purchase said business, and had it not been for the said false representation made by plaintiff he would not have entered into the contract of purchase for said business.

Finally, he prays for judgment in reconvention, cancellation of his notes, return of the $1000.00, and all costs, and for

4.

general relief.

Much testimony was taken, and a great deal of time was consumed by the court a quo in the trial of the case, and doubtless the judge before whom it was tried, the late Judge T.C.W.Ellis, one of the most careful and painstaking members of the bench for many many years prior to his death, in the city of New Orleans, carefully weighed the testimony in this cause and considered it, doubtless, from every angle, admitting much testimony going to the effect, as the judge ruled, which, in our opinion, has encumbered this record beyond measure, but which he - in order, in his opinion, to do absolute justice between the parties - did admit, and which we, too, have carefully considered in connection with this cause, and we have come to the absolute conclusion that, insofar as misrepresentation is concerned, the contract entered into to buy and to sell the picture show in question, made on the 2nd day of April, 1914, substantially gave to the defendant, in detail, the right of occupancy and all the fictures in said theatre, naming them, including the electric wiring, and every little detail that it was possible to enumerate was there stated, and beyond the fact that there was stated that there should be a transfer to the purchaser of the lease, with the consent of the landlord, which was not done, the tenant, however, remaining without objection until he failed to pay the rent - thus doubtless with the consent of the landlord - and alleging that plaintiff was not to go for five years into the same business within a distance or radius of one-half mile of the Majestie Theatre, -- beyond that, the contract in no wise, in our opinion, had at all affected the sale.

The testimony in reference to the illness of the wife as one of the main causes, if not the main reason, for the sale of this property, as stated by the defendant, whether true or false, was outside of and beyond the contract; and if it was to have been included in it the able counsel of the purchaser, who was present

at many of the conversations between plaintiff and defendant at the time of the sale, would doubtless have inserted it. He did not do so; therefore we regard the oral evidence made at the time of the sale, as heretofore recited, or any other oral testimony outside of the written contract between the parties, when fresh in the minds of all, as beyond the rights of the defendant; and whatever may have been said should have been written, and there could have been no dispute and would have been none.

Article 1819 R.C.C. provides:

> "Facts Vitiating Consent. Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by -
> Error;
> Fraud;
> Violence;
> Threats."

Article 1824 reads:

> "The Reality of the Cause is a kind of precedent condition to the contract, without which the consent would not have been given, because the motive being that which determines the will, if there be no such cause where one was supposed to exist, or if it be falcely represented, there can be no valid consent."

In the notes under the same article, we find:

> "The plea of error of law and fraud and want of consideration will not avail to defeat the enforcement of a written and honorable obligation unless clearly shown." (Citing numerous authorities).

Again:

> "An allegation that one signed a contract without reading will not avail." (Authorities).

Article 1825 provides:

> "Error Must Relate to Principal Cause, or Motive. The error in the cause of a contract to have the effect of invalidating it, must be on the principal cause, when there are several; this principal cause is called the motive, and means that consideration without which the contract would not have been made." (And authorities there cited).

6

The contract is unambiguous. The defendant was in the cigar business as a manufacturer, in the City of New Orleans. He concluded - evidently believing that the picture show business would pay better, and possibly for other reasons known to himself, - to buy the picture show in question, under a written contract heretofore alluded to, and he did buy. He paid $1000.00 in cash, when the contract was signed by both parties; he gave the notes without murmur; and after failing in a business which he knew nothing about, and which he freely undertook to engage in, he fell a victim to his own folly. His Honor, the late judge of whom we have already spoken, and whom we all highly regarded and respected, after many days devotedly and wholly given to the trial of this cause, hearing the testimony and seeing the witnesses, became convinced that there was nothing in the reconventional demand worthy of attention, dismissed it, and gave judgment for what was claimed by plaintiff in this petition. And we absolutely concur in his opinion.